UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
SAEID E. JALAYER, JINOUS ATAI,
NEGIN JALAYER, and SAAM JALAYER,

                Plaintiffs,                                  **ORDER**
                                                          10-CV-02285 (LDH) (AKT)
        -against-

JOSEPHINE STIGLIANO as Executrix of the
Estate of Anthony G. Stigliano, LONG ISLAND
LIGHTING COMPANY d/b/a LIPA, and
NORTH SHORE CESSPOOL CLEANING
COMPANY INC.,

                Defendants.


JOSEPHINE STIGLIANO as Executrix of the
Estate of Anthony G. Stigliano,

                Third-Party Plaintiff,

        -against-

THE VILLAGE OF SEA CLIFF,

                Third-Party Defendant.
---------------------------------------------------------------x
LaSHANN DeARCY HALL, United States District Judge:

        Plaintiffs Saeid E. Jalayer, Jinous Atai, Negin Jalayer, and Saam Jalayer (collectively, "Plaintiffs"), bring this action against Defendants Josephine Stigliano (as Executrix of the Estate of Anthony G. Stigliano), Long Island Lighting Company d/b/a LIPA ("LIPA"), and North Shore Cesspool Cleaning Company Inc. ("North Shore"), pursuant to the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607. Specifically, Plaintiffs allege that, as prior owner of lots located on 34 Woodridge Lane, Sea Cliff, New York (the "Properties"), Anthony G. Stigliano permitted Defendants LIPA and North

1

Shore to dispose of hazardous substances on the Properties. As such, according to Plaintiffs, Defendants are strictly liable for the past and future costs incurred for investigation, cleanup, remediation, and removal of the contamination caused by the disposal of hazardous substances on the Properties.

With leave of the Court, Defendant Stigliano filed a third-party complaint against the Village of Sea Cliff, New York (the "Village") alleging that to the extent Defendant Stigliano is held liable for CERCLA response costs, Defendant Stigliano is entitled to contribution from the Village for its role in the contamination. In response, the Village filed an answer, which included a counterclaim against Defendant Stigliano as well as crossclaims against the remaining parties for indemnification and contribution. Plaintiffs then filed an amended answer, which included two counterclaims against the Village.

Third-party Defendant, the Village, moves, pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' second counterclaim, and pursuant to Rule 12(f) to strike certain allegations included in Plaintiffs' counterclaims.

## BACKGROUND[1]

I. **Facts Alleged in the Underlying Complaint**

In or about 1950, with the consent of Stigliano, LIPA, the owner and operator of a power plant, began disposing of materials containing hazardous substances on the Properties. (Compl. ¶¶ 1, 13, 15, ECF No. 1.) Twenty years later, Stigliano consented to a similar arrangement with North Shore, operator of a cesspool maintenance and cleaning service facility. (*Id.* ¶¶ 16, 18.) Specifically, in or around 1972, North Shore began arranging for the disposal of materials containing hazardous substances at the Properties. (*Id.*) The hazardous substances disposed of

---

[1] The facts in Plaintiffs' underlying complaint as well as answer and counterclaims are assumed to be true for purposes of deciding the instant motion.

2

on the Properties by LIPA and North Shore "flowed, drained, leached, or otherwise migrated into the groundwater on the Properties, or are in a position to imminently threaten the ground water on the Properties." (*Id.* ¶¶ 15, 18, 19.) In addition, LIPA and North Shore's release of hazardous substances is alleged to be the proximate cause of contamination on the Properties. (*Id.* ¶ 20.)

In 2002, Plaintiffs Jalayer and Atai purchased the Properties. (*Id.* ¶ 22.) While excavating the Properties for construction in 2006, Plaintiffs discovered a black substance in the soil, which "included, but was not limited to Coal Ash and/or other Waste Materials containing Hazardous Substances." (*Id.* ¶¶ 23–25.) Prior to this discovery, Plaintiffs were unaware of the existence of contamination and/or hazardous substances on the Properties. (*Id.* ¶ 27.) As a result of the discovery, Plaintiffs have incurred and will continue to incur various response and investigation costs in order to remediate the Properties. (*Id.* ¶¶ 29–30.)

In May 2010, under CERCLA §107(a), Plaintiffs brought a single cause of action against the estate of the Stigliano, LIPA, and North Shore.

## II. Subsequent Claims for Indemnification and Contribution

On October 5, 2016, Defendant Stigliano filed a third-party complaint against the Village. (Third Party Compl., ECF No. 130.) Defendant Stigliano alleged that the Village owns two easements that run across the length of the Properties' eastern border. (*Id.* ¶ 6.) In addition, per the third-party complaint, as owners of the easements, the Village excavated the alleged contaminated soil, installed a water main and a storm water drainage pipe, and disposed of the soil on the Properties. (*Id.* ¶¶ 7–8.) According to Defendant Stigliano, this excavation and disposal exacerbated any purported "existing hazardous substance contamination" on the

Properties. (*Id.* ¶ 16.) Thus, Defendant Stigliano brought a claim against the Village for contribution, pursuant to CERCLA.

On January 30, 2017, the Village filed an answer, which included counterclaims against Defendant Stigliano and crossclaims against Plaintiffs as well as Defendants North Shore and LIPA. (Village Answer, ECF No. 149.) Each counterclaim and crossclaim seeks indemnification and/or contribution "under CERCLA, state law[,] and common law theories of liability" in the event that judgment is entered against the Village for damages, costs, or equitable relief. (*Id.* ¶¶ 56, 58, 60.)

## III. Facts Alleged In Plaintiffs' Answer and Counterclaims[2]

On May 25, 2017, Plaintiffs filed an amended answer, which, in part, included additional factual allegations. (Pls.' Answer, ECF No. 173.) In addition to alleging that the disposal of hazardous substances on the Properties has hindered development, Plaintiffs contend that the Village's restrictive zoning policies present an obstacle to development as well. (*Id.* ¶ 9.) In support of this contention, Plaintiffs cite to the Village Zoning Code, which, *inter alia*, prohibits the construction of multi-family dwelling-units in the Village. (*Id.* ¶¶ 10–15.) Plaintiffs allege that this limitation is problematic because "the only feasible use of the Propert[ies] is as multi-family housing, because the cleanup necessary for single family housing is too costly." (*Id.* ¶ 16.)

Plaintiffs' answer also included two counterclaims against the Village. Plaintiffs' first counterclaim arises out of the Village's installation of the water main and storm water drain on its easements. (*Id.* ¶¶ 39–40.) During the installation process, according to Plaintiffs, the Village placed contaminated soil and hazardous substances on the Properties. (*Id.* ¶ 40.) In

---

[2] In Plaintiffs' amended answer and counterclaims, they re-allege the allegations included in the underlying complaint. (Pls.' Answer ¶¶ 35, 62, ECF No. 173.)

4

addition, once the storm water drain had been installed, its catch basin would, at times, back up and cause portions of the Properties to flood with water containing the hazardous substances. (*Id.* ¶¶ 44–46.) For this conduct, Plaintiffs claim that, pursuant to CERCLA, the Village is wholly or partially liable "for investigation, cleanup, remediation and removal of the Contamination, and Plaintiffs' associated past and future response costs." (*Id.* ¶¶ 55, 61.) Plaintiffs' second counterclaim arises out of the Village's issuance of a building permit for "subdivision, demolition[,] and construction of private residences" for the Properties at a time when the Village was aware or should have been aware that, the Properties had been contaminated. (*Id.* ¶¶ 63, 65.) Per Plaintiffs, in issuing the building permit, the Village breached its special duty to warn Plaintiffs about the waste that had been dumped on the Properties. (*Id.* ¶¶ 71–72.) As such, Plaintiffs contend that the Village is liable under a negligence theory for reasonable damages, including lost profits and remediation costs. (*Id.* ¶¶ 68–80.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a counterclaim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id.* (quoting *Twombly*, 550 U.S. at 556). While this standard requires more than a "sheer possibility" of a defendant's liability, *id.*, "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss, *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the Court must merely determine whether the complaint

itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint [and counterclaim] as true." *Id*. (internal citations omitted).

## DISCUSSION

### I. Village's Motion to Dismiss

The Village argues that Plaintiffs' second counterclaim fails to set forth an actionable claim because, among other reasons, it is time-barred. The Court agrees.

As recognized by both parties, the three-year statute of limitations, applicable to Plaintiffs' second counterclaim has passed.[3] (Village Memorandum of Law ("Village MOL") at 7, ECF No. 203; Plaintiffs' Opposition Memorandum of Law ("Pls.' Opp. MOL") at 7, ECF No. 204.) Plaintiffs press, however, that under New York law, a counterclaim that is otherwise time barred will be deemed timely if it "arose from the transactions, occurrences, or series of transactions or occurrences, upon which a claim asserted in the complaint depends." N.Y. C.P.L.R. § 203(d). While true, this exception is inapplicable in this case. That is, the exception may only apply where, unlike here, there is "a tight nexus between [the] claim and counterclaim." *Greenspan v. Miron*, 130 A.D.3d 1181, 1183 (3d Dep't 2015) (citing *Estate of Mantle v. Rothgeb*, 537 F. Supp. 2d 533, 544 (S.D.N.Y. 2008)); *see also Mopex, Inc. v. Am. Stock Exch., LLC*, No. 2-CV-1656, 2002 WL 342522, at *7 (S.D.N.Y. Mar. 5, 2002), *amended*, No. 2-CV-1656, 2002 WL 523417 (S.D.N.Y. Apr. 5, 2002) ("[C]ounterclaims that 'present a new theory' or allege a new cause of action will be permitted as long as they relate to the same transactions or occurrences as the complaint.") (quoting *Geller Media Mgmt., Inc. v. Chenault*, No. 95-CV-8301, 1997 WL 362446, at *2 (S.D.N.Y. July 1, 1997) (alterations omitted)).

---

[3] An action to recover damages for an injury to property must be commenced within three years. N.Y. C.P.L.R. § 214.

Here, the nexus between the Village's claim and Plaintiffs' counterclaim is too attenuated to warrant the invocation of CPLR § 203(d). The Village's action against Plaintiffs is premised upon Defendant Stigliano's claim that the Village is liable for installing a storm water drain that exacerbated the contamination at issue. In sum and substance, the Village seeks indemnification and contribution from Plaintiffs to the extent it is held liable for harm resulting from the installation of the storm water drain. Plaintiffs' second counterclaim is untethered from and does not arise out of the installation of the storm water drain and any resulting contamination. As Plaintiffs' pleading states plainly, their second counterclaim arises out of the Village's alleged breach of a special duty when it issued a building permit to Plaintiffs without also warning them of known contamination to the Properties. The Village's claim and Plaintiffs' second counterclaim, therefore, arise out of two separate and unrelated transactions or occurrences—one the installation of the storm water drain and the other the issuance of the building permit. On these facts, Plaintiffs cannot employ CPLR § 203(d) to revive their patently time-barred counterclaim for negligence.[4] Accordingly, Plaintiffs' second counterclaim is dismissed as untimely.[5] *See e.g.*, *Corning Inc. v. Freight Revenue Recovery of Miami, Inc.*, No. 11-CV-6377, 2012 WL 1805500, at *2–3 (W.D.N.Y. May 17, 2012) (dismissing counterclaim where the original claim was predicated upon a contract and the counterclaim was predicated upon a letter sent as a result of a breach of the contract).

---

[4] In contrast, Plaintiffs' first counterclaim for a declaration, pursuant to CERCLA, is premised upon the Village's liability under CERCLA due to the manner in which the Village installed the storm water drain and has a tight nexus to the Village's claim.

[5] Having determined that Plaintiffs' negligence claim is time-barred, the Court need not address the Village's additional arguments in support of its motion to dismiss.

**II.      Village's Motion to Strike**

The Village moves to strike the allegations contained in paragraphs nine through twenty-one of Plaintiffs' amended counterclaims largely on bases that the allegations are immaterial and "intended to make the Village look like the 'bad guy.'" (Village MOL at 10–13, ECF No. 203; Village Reply Brief at 15–16, ECF No. 205.)  In addition, the Village represents that it may be prejudiced if Plaintiffs use the allegations to revive their withdrawn claims at a later time.[6]  (Village MOL at 12–13.)  The Court disagrees.

Motions to strike are governed by Rule 12(f), which provides, in relevant part, that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  To prevail on a motion to strike, the movant must show "(1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the relevant issues; and (3) permitting the allegations to stand would result in prejudice to the movant."  *Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001)(quoting *Koch v. Dwyer*, No. 98-CV-5519, 2000 WL 1458803, *1 (S.D.N.Y. Sept. 29, 2000)).  In assessing the merits of a Rule 12(f) motion, a district court should be mindful that such motions are "viewed with disfavor and infrequently granted."  *Emilio v. Sprint Spectrum L.P.*, 68 F. Supp. 3d 509, 514 (S.D.N.Y. 2014) (quoting *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003)).  As such, a district court "should not tamper with the pleadings unless there is a strong reason for so doing."  *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976).

---

[6] Plaintiffs' February 21, 2017 answer included four counterclaims:  (1) contribution under CERCLA, (2) breach of a special duty to warn, (3) exclusionary zoning in violation of the Fair Housing Act, and (4) exclusionary zoning in violation of Plaintiffs' due process rights as guaranteed by the U.S. Constitution and the New York State Constitution. (*See* ECF No. 158.)  Following the April 28, 2017 pre-motion conference, Plaintiffs, with leave of the Court, filed an amended answer that did not include their third and fourth counterclaims.  (*See* ECF No. 173.)

Here, Plaintiffs correctly assert that the Village has failed to carry its burden with respect to the third factor—prejudice. (Pls.' Opp. MOL at 12.) The Village concedes that its concern regarding Plaintiffs' ability to engage in improper discovery on the purported irrelevant allegations can be addressed by the Court through managed discovery. (Village MOL at 12.) As such, the Village's only remaining concern is that Plaintiffs will attempt to revive their withdrawn claims at the eleventh hour, thereby precluding the Village from being able "to defend these claims through discovery." (*Id.*) This argument is purely speculative. Should Plaintiffs proceed as the Village suggests any revival of a withdrawn claim must be sanctioned by the Court based on a grant to amend the complaint. If the Village has viable arguments concerning prejudice they can be raised at that time. Because there are adequate procedural mechanisms to prevent the trial by ambush tactics that the Village fears, the Court declines to strike the allegations contained in paragraphs nine through twenty-one of Plaintiffs' amended counterclaims.

## CONCLUSION

Based on the foregoing, the Village's motion to dismiss Plaintiffs' second counterclaim is granted; and, the Village's motion to strike is denied.

Dated: Brooklyn, New York
      September 10, 2018

SO ORDERED:

    /LDH
LaSHANN DeARCY HALL
United States District Judge